```
                                        USDC SDNY
                                        DOCUMENT
UNITED STATES DISTRICT COURT            ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK           DOC #:
- - - - - - - - - - - - - - - - - -x    DATE FILED: 1-25-11
                                :
CARMELA LANZETTA,
                                :
                Plaintiff,              OPINION
                                :
          - against -                   08 Civ. 6181 (DC)
                                :
FLORIO'S ENTERPRISES, INC., d/b/a
FLORIO'S RESTAURANT, RALPH AMORUSO,:
and LAWRENCE AMORUSO,
                                :
                Defendants.
                                :
- - - - - - - - - - - - - - - - - -x
```

**APPEARANCES:**   JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM, LLP
                   Attorneys for Plaintiff
                        By:  Daniel Maimon Kirschenbaum, Esq.
                             Matthew David Kadushin, Esq.
                   757 Third Avenue
                   New York, NY  10017

                   DEVEREAUX & ASSOCIATES, P.C.
                   Attorneys for Defendants
                        By:  Sidney Baumgarten, Esq.
                             John W. Russell, Esq.
                   39 Broadway, Suite 910
                   New York, NY  10006

**CHIN, Circuit Judge**

In this employment action, plaintiff Carmela Lanzetta seeks to recover unpaid wages from defendants Florio's Enterprises d/b/a Florio's Restaurant ("Florio's"), Ralph Amoruso ("Ralph"), and Lawrence Amoruso ("Lawrence") under the Fair Labor Standards Act (the "FLSA") and the New York State

Labor Law (the "Labor Law").  Lanzetta worked as a waitress at Florio's, a restaurant in Little Italy in New York, for approximately four years.  She contends that she worked only for tips, and seeks to recover wages required by state and federal law.  Defendants tell a completely different story, and contend not only that they paid Lanzetta hourly wages, but that they paid her even more than the law required.

The case was tried to the Court on October 18 and 27, 2010.  For the reasons that follow, judgment will be entered in favor of Lanzetta to the extent set forth below.

### BURDEN OF PROOF

Both the FLSA and the Labor Law require employers to keep detailed records of employee wages, tips, hours, and other employment information.  See 29 U.S.C. § 211(c); N.Y. Lab. Law §§ 195(4), 661.[1]  These are "substantive obligations that are 'fundamental underpinnings' of [the statutes] and critical to ensuring the[ir] . . . effectiveness, for an employer's

---

[1]  Specifically, employers must maintain records showing, inter alia, (1) total daily and weekly hours employees worked, (2) regular hourly rates of pay for each week in which overtime compensation is due, (3) total daily and weekly earnings, (4) total wages paid, (5) total weekly premium pay for overtime hours, and (6) dates of payment.  See 29 C.F.R. §§ 516.2, .28; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-2.1, -2.2.

'[f]ailure to keep accurate records can obscure a multitude of wage and overtime violations.'" <u>Moon v. Kwon</u>, 248 F. Supp. 2d 201, 218 (S.D.N.Y. 2002) (quoting <u>Wirtz v. Miss. Publrs. Corp.</u>, 364 F.2d 603, 607 (5th Cir. 1996)). Accordingly, although an employee suing for lost wages bears "the burden of proving that [s]he performed work for which [s]he was not properly compensated," that burden is lessened when the employer fails to comply with its record-keeping obligations. <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946).

Under the FLSA, the employee may meet her burden by submitting "'sufficient evidence from which violations of the [statute] and the amount of an award may be reasonably inferred.'" <u>Reich v. S. New Eng. Telecomms. Corp.</u>, 212 F.2d 58, 66 (2d Cir. 1997) (quoting <u>Martin v. Selker Bros., Inc.</u>, 949 F.2d 1286, 1296-97 (3d Cir. 1991)). "[T]he employee should not speculate," <u>Kolesnikow v. Hudson Valley Hosp. Ctr.</u>, 622 F. Supp. 2d 98, 118 (S.D.N.Y. 2009), but she may rely solely on her "present memory and recollection" to carry her burden, <u>Candela-Rodriguez v. Milbank Real Estate</u>, No. 09 Civ. 6588 (JSR), 2010 WL 3701309, at *2 (S.D.N.Y. Sept. 20, 2010). The employer then must "come forward with evidence of the precise

amount of work performed or with evidence to negative the
reasonableness of the inference to be drawn from the employee's
evidence."[2] <u>Mt. Clemens Pottery</u>, 328 U.S. at 688; <u>see also</u> <u>Yu
G. Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d 240, 255 (S.D.N.Y.
2008). If the employer fails to do so, the court may enter
judgment in the employee's favor, using her recollection to
determine damages, "even though the result be only approximate."
<u>Reich</u>, 121 F.3d at 67; <u>see also</u> <u>id.</u> at 70 n.3 (finding no error
in damages that "might have been somewhat generous" but were
reasonable in light of the evidence and "the difficulty of
precisely determining damages when the employer has failed to
keep adequate records").

Here, as discussed below, Lanzetta's testimony was
largely credible, while defendants provided inconsistent and
incredible evidence, and they failed utterly to meet their
record-keeping obligations under the law.

---

[2]   The Labor Law provides that employers who keep inadequate
records "shall bear the burden of proving that the complaining
employee was paid wages, benefits, and wage supplements." N.Y.
Lab. Law § 196-a. As a result, "the finding of FLSA liability
. . . necessarily implies a finding of liability under New York
law." <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 337 n.15
(S.D.N.Y. 2005).

## FINDINGS OF FACT[3]

### A.   The Parties

Florio's is a family-style Italian restaurant in
Little Italy.  (Tr. 52; JPTO 2 ¶ 1).  It operates seven days a
week and opens every day at noon.  (Tr. 46, 52).  Closing time
"varies" depending on the day's business, but the kitchen is
ordinarily open until 9:30 or 10:00 pm, and the bar may not
close until 1:00 am or later.  (See id. 53-54, 59).  At all
relevant times, Ralph was the president, owner, and sole
shareholder of Florio's (id. 44), but the restaurant is
nevertheless a family business:  Ralph's sister, wife, daughter,
and son -- Lawrence -- have all worked there in various
capacities (see id. 23, 34-35, 44, 53, 59).

Lanzetta was born in Italy.  She came to the United
States with her mother in 1976 to study English.  (Id. 26).  Her
first stateside job was at a bank, where she helped Italian-

---

[3]   The record consists of Lanzetta's W-2 statements for the
years 2004 to 2008 ("PX A"), Ralph's affidavit in support of
summary judgment dated June 23, 2009 ("PX C"), records kept by
an outside payroll company, Paychex, Inc. ("Paychex"), for the
years 2004 to 2008 ("DX A"), a notice from the Unemployment
Insurance Division of the N.Y. State Department of Labor dated
January 9, 2009, and trial testimony from Lanzetta and Amoruso.
The stipulated facts contained in the parties' proposed joint
pretrial order ("JPTO") are also part of the record.

speaking customers with pension-related questions.  (Id. 26-27).
In 1981, Lanzetta began working in the restaurant industry.
Over the years she has worked in a number of New York City
restaurants as a waitress, coat checker, and cashier.  (Id. 28-
30).

**B.   Lanzetta's Employment at Florio's**

Lanzetta lives near Florio's.  In 2004 she learned
from a neighbor that the restaurant was hiring wait staff.  (Id.
5, 34).  Ralph interviewed her and she started work the next
morning, on June 6, 2004.  (Id. 5-6, 46; JPTO 2 ¶ 7).  During
her first day, Ralph explained to Lanzetta that she would work
for tips only and receive no wage.  (Tr. 9).  She acquiesced to
this arrangement and worked according to its terms for
approximately four years.  She never complained because she
needed the job, the restaurant was close to home, and the tips
were good.  (Id. 14-15, 33-34, 46).[4]  No one at Florio's was

---

[4]  Defendants' assertion that Lanzetta was paid an hourly wage
is rejected.  First, they produced no checks, pay stubs, tax
returns, ledgers, or time records.  (See Tr. 54, 94-96).
Second, defendants' descriptions of Lanzetta's purported wage-
earning were inconsistent.  Ralph testified that she was paid "a
little above the minimum wage" (id. 49-50), she "actually got
more than the minimum wage ten times over" (id. 62), she
received an hourly wage (see id. 91), and she got a flat weekly
salary (see id. 65-67.  Compare id. 50, and JPTO 13 ¶ K, with
Tr. 62).

required to clock in or out, and there was no formal timekeeping
system.  (JPTO 2 ¶ 8).[5]  Generally, when a shift ended the wait
staff pooled their tips, cashing out credit card tips from the
register.  Then, they split the pool evenly among themselves and
set aside fifty percent for the busboys.  (Tr. 34, 35-36, 73).
The restaurant did not take a cut, but when Amoruso family
members waited tables, they received their shares of the pool.
(Id. 34-36).

Lanzetta typically logged six-day workweeks at the
restaurant, starting each day at approximately noon and staying
until approximately 10 pm and sometimes later.  (See id. 8,
32-33, 35, 47, 53-54).[6]  She was often the last person to leave

---

[5]  Instead, defendants claimed that they kept handwritten
records of the hours employees worked, which they then reported
to Paychex on a weekly basis.  (Tr. 46, 47; see JPTO 13 ¶¶ K-L).
But defendants produced no such handwritten notes, and the
Paychex records introduced at trial contained no entries of
hours at all.  (See DX A).  Furthermore, defendants acknowledged
that their timekeeping amounted to documenting whether employees
appeared for scheduled shifts, rather than the amount of time
they actually worked.  (See Tr. 25, 46-48, 77-78; JPTO 13 ¶¶
K-L).  The payroll was generally repeated week after week unless
someone missed a shift, and no adjustments were made for the
actual time employees worked.  (Tr. 48, 78).  Additionally,
Ralph left the restaurant "any time after 9 [pm]," meaning that
at times he could not know when Lanzetta left.  (See id. 51).

[6]  Ralph's attempts to refute Lanzetta's recollection of her
workweek were nonspecific and inconsistent.  Ralph could not
articulate the wait staff's shifts generally, let alone

the restaurant.  (Id. 32-33).  Tuesday was usually her day off,
although she would sometimes work if someone needed a shift
covered or was out sick.  (Id. 7, 8, 11-12, 23, 31).  She also
worked seven days during the winter holidays and the San Gennaro
Festival, a ten- to twelve-day celebration in Little Italy at
the end of each summer.  (Id. 11).  She scheduled vacation time
around these busy seasons, visiting her family in Italy for two
weeks every January and for another two weeks or so at the
conclusion of the festival.  (Id. 12, 71).  In light of all the

---

Lanzetta's in particular.  He testified that there were two
shifts, noon-to-six and six-to-ten, and he asserted that
Lanzetta worked the earlier of these.  Then he said that she
worked "12 to 8 or sometimes 2 to 10," before reconfirming that
"the shifts were 12 to 6 and 6 to 10" and explaining that it
"fluctuated."  (Tr. 53-54).  Lanzetta's overtime was an
especially problematic topic.  Defendants asserted unequivocally
in their proposed factual findings that "[n]o employee worked
more than forty (40) hours per week as a matter of policy."
(JPTO 13 ¶ H).  On cross-examination, however, Ralph testified
that in 2006 Lanzetta began working "two hours extra every day"
as a "hawker" -- meaning that she "[w]ould stay out in the
street and try[] to encourage people [to] com[e] into the
restaurant."  (Tr. 63, 68).  Each week, he maintained, she
worked "forty hours [as a waitress] and ten as a hawker."  (Id.
89).  This contradicted not only defendants' proposed factual
findings but also an affidavit Ralph submitted to the court
during summary judgment in which he stated "that no employees
work over-time at Florio's as a matter of policy."  (PX C).
When plaintiff's counsel confronted him with the conflicting
statements, Ralph could not reconcile them.  (Tr. 82-83).
Moreover, the assertion that Lanzetta had worked as a "hawker"
had not been made by defendants before.

evidence as well as defendants' failure to maintain proper records, I find that Lanzetta worked approximately 60 hours per week, 48 weeks per year.

## C.   The Tax Arrangement

Lanzetta earned significant tip income working at Florio's and wanted her employment to be on the books. (See id. 10, 13). After she had been at the restaurant for a couple weeks, she approached Ralph about the matter.[7] Ordinarily, a restaurant employee's withholding taxes are deducted from her wages, but Lanzetta did not receive a wage. To avoid having to pay her one, Ralph agreed to put her on the books if she would cover the taxes with her tip earnings. She agreed she would and made these payments in weekly installments, even when she was away on vacation. (Id. 8-10, 12-13). For almost two years thereafter, the payments were $140 per week, an amount that corresponded with the $600 she directed Florio's to report as her weekly tip income. During the final two years of her

---

[7]  Defendants did not dispute that they had not included Lanzetta in the Paychex system from the outset. Nor could they, for they agreed that her employment began on June 6, 2004, and yet she did not appear in the records until June 27. Defendants also did not dispute that this action was taken at Lanzetta's request.

employment, she declared $700 per week and her weekly payments
to Ralph increased accordingly, to $160. (<u>Id.</u> 13-14).

Defendants put Lanzetta into the Paychex system and
recorded a wage amount that they repeated every week, resulting
in the payment of withholding taxes.[8]  While her payments were
for $140, defendants remitted $111.85 per week in taxes.  When
the payments increased to $160, they remitted $158.29.  (<u>See</u>
<u>generally</u> DX A).  Defendants kept the excess.

## PROCEDURAL HISTORY

Lanzetta commenced this action on July 8, 2008.  At
the close of discovery, defendants moved for summary judgment.
I denied the motion.  The parties waived their right to a jury
trial, and the case was tried to the Court on October 18 and 27,
2010.  At the close of plaintiff's case, defendants moved to
dismiss, and, ruling from the bench, I denied the motion as to
Florio's and Ralph and reserved judgment as to Lawrence.  (Tr.

---

[8]  The Paychex report was an obvious sham:  it reported wages
but not hours, showed none of the pay variations natural to
hourly employment, and repeated the same amount of tip income
throughout.  Although Lanzetta took several weeks of vacation
each year, wages and tips were reported every single week for
three-and-a-half years.  (Tr. 12-13).  Ralph also testified
inconsistently as to whether Lanzetta and other emplyees
received vacation pay.  (<u>Id.</u> 71-73).

39).  At the conclusion of trial, I reserved decision.  (<u>Id.</u>

107).

<u>DISCUSSION AND CONCLUSIONS OF LAW</u>

Plaintiff seeks to hold defendants jointly and

severally liable under the FLSA and the Labor Law for unpaid

wages as well as tips improperly retained in excess of her tax

obligations.  She maintains that because defendants' violations

were willful, she is entitled to both compensatory and

liquidated damages, as well as attorneys' fees and costs.

**A.   <u>Liability</u>**

**1.   <u>Liability for Unpaid Wages</u>**

Defendants were required by state and federal law to

pay Lanzetta a minimum wage for each hour she worked, 29 U.S.C.

§ 206; N.Y. Lab. Law § 652(1), and to pay her at time-and-a-half

the minimum wage for each hour she worked over the forty-hour

weekly maximum, 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. &

Regs. tit. 12, § 137-1.3.  Defendants violated both requirements

because Lanzetta worked only for tips.  Therefore, they are

liable to her for back wages.  In addition, under the Labor Law,

Lanzetta was entitled to an extra hour's pay whenever her

workday was longer than ten hours.  N.Y. Comp. Codes R. & Regs.

11

tit. 12, § 137-1.7.  Defendants never paid her this spread-of-hours premium.  They are liable for those amounts as well.

### 2.  Liability for Improperly Retained Tips

Section 196-d of the Labor Law prohibits employers from demanding, accepting, or retaining "any part of the gratuities, received by an employee."  Under the terms of Ralph's tax arrangement, defendants accepted portions of Lanzetta's tips on a weekly basis.  The Paychex records that documented this arrangement show defendants remitting withholding taxes in amounts smaller than those they received from her.  (See generally DX A).  Rather than return the remainder, defendants kept it every week.  This violated § 196-d, and they are liable to Lanzetta for the excess amounts retained.

### 3.  Which Claims are Timely?

This action was initiated on July 8, 2008 and arises out of conduct spanning the entirety of plaintiff's employment, which began on June 6, 2004.[9]  All of plaintiff's claims are timely under the Labor Law's six-year statute of limitations.

---

[9]  Neither party offered an end-date for Lanzetta's employment, but they agreed that it was sometime around June 2008. (See Tr. 5, 13-14; JPTO 4 ¶ 20, 13 ¶ R).  The Paychex records stop at the pay period ending on May 25, 2008.  I will use this date.

N.Y. Lab. Law § 663(3).  The FLSA's statute of limitations, however, is only two years, except it is three years when the employer's violations were willful.  29 U.S.C. § 255(a).

Violations are "willful" when an employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Willfulness "refer[s] to conduct that is not merely negligent," McLaughlin, 486 U.S. at 133, and it requires more than "an awareness of the possible application of the FLSA," id. at 130 (citations and quotation marks omitted).  Plaintiff bears the burden of proof on this issue.  Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009).

Defendants knew of their statutory obligations (see Tr. 62, 88-89; JPTO 14 ¶ U), but failed to pay plaintiff an hourly wage and actually manufactured wages to facilitate their tax arrangement with her.  This conduct was plainly willful.  As a result, the FLSA's three-year statute of limitations applies, and plaintiff may recover under federal law for all causes of

action accruing on or after July 8, 2005.[10]  For the period that
is untimely under federal law, "the state law claim[s] [are]
operative." Rios v. Neighborhood Constr. Corp., No. 07 Civ.
8701 (LTS), 2009 WL 3335354, at *1 n.2 (S.D.N.Y. Oct. 14, 2009).

### 2.   Equitable Tolling is not Warranted

Lanzetta argued that her entire employment should be
equitably tolled based on defendants' failure to provide her
notice of her rights under the FLSA, as required by the statute.
(Tr. 24; JPTO 8-9 ¶ 30); see 29 U.S.C. § 203(m); 29 C.F.R. §
516.4.  I disagree.

"Equitable tolling allows courts to extend the statute
of limitations beyond the time of expiration as necessary to
avoid inequitable circumstances," Johnson v. Nyack Hosp., 86
F.3d 8, 12 (2d Cir. 1996), but it "applies only in the rare and
exceptional" case, Bertin v. United States, 478 F.3d 489, 494
n.3 (2d Cir. 2007).  The relevant question when considering a
request to toll is "whether a reasonable plaintiff in the

---

[10]  A claim for unpaid wages accrues on the date on which the
employee should have been paid for services rendered but was
not.  Doo Nam Yang, 427 F. Supp. 2d at 337.  Florio's pay
periods were one week.  The Paychex records show that July 8,
2005 falls within a period beginning on July 4, 2005 and ending
on July 10, 2005.  That entire week's worth of unpaid wages
therefore accrued on July 10, 2005 and are timely.

circumstances would have been aware of the existence of a cause of action," Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 323 (2d Cir. 2004), and "despite all due diligence he [wa]s unable to obtain vital information bearing on the existence of his claim," Valdez ex rel. Donely v. United States, 518 F.3d 173, 182 (2d Cir. 2008) (quotation marks omitted).  Accordingly, the failure to provide an employee the notice required by the FLSA "may be a sufficient basis for tolling," as plaintiff argued (see JPTO 8-9 ¶ 30 (quoting Saigon Grill, 595 F. Supp. 2d at 259)), but only if that failure contributed to the employee's unawareness of his rights.

There was no evidence that Lanzetta, who had more than twenty years of experience in the New York City restaurant industry when she started at Florio's, was unaware of the existence of her claims.  Rather, her testimony showed that she acquiesced to defendants' approach to compensation.  For instance, she testified that defendants "told me no [wages]. Just tips." (Tr. 9).  When asked why she agreed to work at Florio's anyway, she testified that the tips were substantial enough to justify the arrangement.  (Id. 34).  And, when asked why she did not complain or ask to be paid a wage, she testified

that she "never said anything" because "you couldn't talk to [defendants]." (Id.). In short, awareness of her claims was not the issue, and therefore this case does not warrant equitable tolling.

**B.**   **Damages**

        **1.**   **Plaintiff will Recover Wage-Related Damages at the Regular Minimum Wage-Rate**

A threshold issue is what hourly rate to use in calculating damages. Lanzetta earned significant tip income waiting tables at Florio's. Had defendants paid her, they might have been able to treat a portion of her tips as a credit against their wage obligations under both federal and state law and pay her at a rate below the regular minimum wage. See 29 U.S.C. § 203(m); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-2.2. It was not clear, however, that defendants intended to take advantage of these tip credit provisions. They did not argue as much, either in the pretrial order or at trial. On the contrary, Ralph was adamant that he paid Lanzetta much more than a tipped minimum wage, claiming that "she actually got more than the minimum wage ten times over." (Tr. 62).

Even if defendants had intended to take a tip credit, they would not have been entitled to do so.  Both state and federal law impose certain notice requirements on employers that are "strict" prerequisites to taking such credits.  Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *17, *18 (S.D.N.Y. Feb. 1, 2007); see Heng Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048 (GEL), 2006 WL 851749, at *3 (S.D.N.Y. Mar. 6, 2006) (under FLSA, employer must (1) inform tipped employee of tip credit provisions, and (2) permit employee to retain all tips (citing 29 U.S.C. § 203(m)); Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309-10 (E.D.N.Y. 2009) (Labor Law allows tip credit where employer (1) posts notice of minimum wage provisions, and (2) provides tipped employee with statement of allowances "claimed as part of the minimum wage" (quoting N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-2.1, -2.2)).[11]  As defendants presented no evidence that they satisfied the notice requirements of either the FLSA or the Labor Law, "no tip credit

---

[11]  As of January 1, 2011, tip credit and other Labor Law regulations pertaining to restaurant employees were revised and relocated.  See, e.g., N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 ("An employer may take a credit towards the basic minimum hourly rate if a . . . food service worker receives enough tips and if the employee has been notified of the tip credit as required."); id. § 146-2.2 to -2.6.

can be taken and [they are] liable for the full minimum wage."

Guo Xing Cao v. Chandara Corp., No. 00 Civ. 8057 (SAS), 2001 WL
34366628, at *5 (S.D.N.Y. July 25, 2001) (quotation marks
omitted).   Lanzetta's damages will be calculated accordingly.

          Further, although she may not recover under the FLSA
and the Labor Law when both statutes offer relief, she may take
advantage of the one that offers the higher measure of recovery.
Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., 08 Civ. 3725
(DC), 2010 WL 4159391, at *2 n.2, *3 (S.D.N.Y. Sept. 30, 2010);
see 29 U.S.C. § 218(a) (federal minimum wage is intended to be a
floor, not a ceiling on the amount of recovery for lost wages).
The minimum wage in New York equaled or exceeded the federal
level at all relevant times, but because the FLSA accords
liquidated damages equal to 100 percent the wages due, it
provides the higher measure of damages overall.[12]   See Alejo v.
Darna Rest., No. 09 Civ. 5436 (CM) (AJP), 2010 WL 5249383, at *5

---

[12]  In 2004, the minimum wage under both statutes was $5.15.   In
New York, it was raised to $6.00 on January 1, 2005, and to
$6.75 on January 1, 2006.   As of January 1, 2007 and for all
relevant times thereafter, the minimum wage was $7.15.   N.Y.
Lab. Law § 652(1); N.Y. Comp. Codes R. & Regs. tit. 12, §
137-1.2.   The federal minimum wage increased to $5.85 on July
24, 2007, where it remained at all relevant times thereafter.
See 29 U.S.C. § 206.   Where the statutes offer overlapping
relief, the federal minimum wage will be used.

18

n.6 (S.D.N.Y. Dec. 17, 2010) (calculating damages using the federal minimum wage because plaintiffs were "entitled to greater statutory liquidated damages under the FLSA than under New York law").

    2.   **Compensatory Damages**

        (a)   **Minimum Wages and Overtime**

       Under both the FLSA and the Labor Law, Lanzetta is entitled to recover at the ordinary minimum wage-rate for 40 of the 60 hours she worked each week, and at the overtime rate of time-and-a-half the minimum wage for the remaining 20 hours. See 29 U.S.C. §§ 206, 207; N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.2, -1.3.

       As previously discussed, claims accruing before July 8, 2005 are untimely under federal law.  They are compensated at the state wage-rate.  Here are her damages under the Labor Law:

| Year | Wage Type | Pay Rate | # Hours | Weeks Worked | Amounts Due |
|------|-----------|----------|---------|--------------|-------------|
| 2004 | Regular | $  5.15 | 40 hours | 27 weeks | $  5,562.00 |
|      | Overtime | $  7.725 | 20 hours | 27 weeks | $  4,171.50 |
| 2005 | Regular | $  6.00 | 40 hours | 24 weeks | $  5,760.00 |
|      | Overtime | $  9.00 | 20 hours | 24 weeks | $  4,320.00 |
| Total |  |  |  |  | $ 19,813.50 |

19

Here are her damages under the FLSA, for claims accruing on or after July 8, 2005:

| Year | Wage Type | Pay Rate | # Hours | Weeks Worked | Amounts Due |
|------|-----------|----------|---------|--------------|-------------|
| 2005 | Regular | $   5.15 | 40 hours | 24 weeks | $   4,944.00 |
|      | Overtime | $   7.725 | 20 hours | 24 weeks | $   3,708.00 |
| 2006 | Regular | $   5.15 | 40 hours | 48 weeks | $   9,888.00 |
|      | Overtime | $   7.725 | 20 hours | 48 weeks | $   7,416.00 |
| 2007[13] | Regular | $   5.15 | 40 hours | 27 weeks | $   5,562.00 |
|      | Overtime | $   7.725 | 20 hours | 27 weeks | $   4,171.50 |
|      | Regular | $   5.85 | 40 hours | 11 weeks | $   2,574.00 |
|      | Overtime | $   8.775 | 20 hours | 11 weeks | $   1,930.50 |
| 2008 | Regular | $   5.85 | 40 hours | 20 weeks | $   4,680.00 |
|      | Overtime | $   8.775 | 20 hours | 20 weeks | $   3,510.00 |
| TOTAL |  |  |  |  | $   48,384.00 |

(b)   **Spread of Hours**

Under the Labor Law, Lanzetta may recover a spread-of-hours premium equal to one hour's wage for any day she worked in excess of ten hours.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7.  I accept her testimony that she worked these long days often, although I do not accept the assertion that she did so

---

[13]   A wage increase took effect on July 24, 2007.  See 29 U.S.C. § 206.  In addition, in late 2007 and early 2008, Lanzetta took an eleven-week hiatus from work to tend to a family matter. (See DX A; Tr. 71).  The payroll records stopped at the week ending on October 14, 2007 and picked up again at the week ending on January 13, 2008.

everyday.  I find that she worked two days a week in excess of ten hours.  Accordingly, her spread-of-hours damages are as follows:

| Year | Wage Type | Pay Rate | # Hours | Days Worked | Amounts Due |
|------|-----------|----------|---------|-------------|-------------|
| 2004 | Spread of hours | $  5.15 | 1 hour | 56 days | $      288.40 |
| 2005 | Spread of hours | $  6.00 | 1 hour | 96 days | $      576.00 |
| 2006 | Spread of hours | $  6.75 | 1 hour | 96 days | $      648.00 |
| 2007 | Spread of hours | $  7.15 | 1 hour | 76 days | $      543.40 |
| 2008 | Spread of hours | $  7.15 | 1 hour | 40 days | $      286.00 |
| Total | | | | | $    2,341.80 |

### (c)  Wrongfully Retained Tips

Beginning two weeks after she started work and for almost two years thereafter, Lanzetta paid defendants $140 every week to cover her taxes.  Of this amount, defendants remitted only $111.85, keeping the $28.15 overpayment.  For the last two years or so, she paid defendants $160 each week, of which $158.29 was put toward her taxes.  Defendants kept the $1.71 difference. (See DX A).  The Paychex records indicated 93 weeks' worth of $140 payments -- beginning with the week ending on June 27, 2004 through the week ending on April 2, 2006.  (See id.).  One hundred weeks of $160 payments followed.  Lanzetta is

entitled to recover the excess amounts defendants unlawfully retained:  $2,788.95.[14]

### 3.   Liquidated Damages

#### (a)   Liquidated Damages under the FLSA

An employee who prevails under the FLSA is entitled to liquidated damages equal to the unpaid wages.  29 U.S.C. § 216(b).  Although "double damages are the norm," Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) (quotation marks omitted), courts have the discretion not to award such damages if an employer shows that its violations were in good faith, see 29 U.S.C. § 260; Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) ("To establish . . . 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them.") (quotation marks omitted).  Defendants did not attempt to establish good faith in the present case, but if they had, they would have been unsuccessful for reasons already discussed. Lanzetta is therefore entitled to recover liquidated damages under the FLSA equal to the amount set forth above, $48,384.00.

---

[14]  The calculation is:  (93 weeks x $28.15) + (100 weeks x $1.71).  This does not include the eleven weeks during which plaintiff made no tax payments.  (See supra n.13).

**(b)**   <u>Liquidated Damages under the Labor Law</u>

Under the Labor Law, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," a successful plaintiff is entitled to liquidated damages "equal to twenty-five percent of the total of such underpayments found to be due the employee and any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."   N.Y. Lab. Law § 663(1); <u>see also</u> <u>id.</u> § 198(1-a).   As discussed, defendants neither acted in good faith nor tried to argue that they did.   Accordingly, Lanzetta is entitled to liquidated damages under the Labor Law equal to 25 percent of unpaid Labor Law minimum, overtime, and spread-of-hours wages, as well as for tips illegally retained by defendants.

| Year | Wage Type | Pay Rate | # Hours | Weeks Worked | Amounts Due |
|------|-----------|----------|---------|--------------|-------------|
| 2004 | Regular | $   5.15 | 40 hours | 27 weeks | $   5,562.00 |
|      | Overtime | $   7.725 | 20 hours | 27 weeks | $   4,171.50 |
| 2005 | Regular | $   6.00 | 40 hours | 24 weeks | $   5,760.00 |
|      | Overtime | $   9.00 | 20 hours | 24 weeks | $   4,320.00 |
| Spread of hours total | | | | | $   2,341.80 |
| Retained tips total | | | | | $   2,788.95 |
| Subtotal | | | | | $  24,944.25 |
| **Total** (25% of Subtotal) | | | | | **$   6,236.06** |

4.   **Summary**

Based on the foregoing calculations, Lanzetta is entitled to damages totaling $127,938.31.  This represents (1) $19,813.50 in minimum and overtime under the Labor Law, (2) $48,384.00 in minimum and overtime wages under the FLSA, (3) $2,341.80 in spread-of-hours premiums; (4) $48,384.00 in liquidated damages under the FLSA, (5) $6,236.06 in liquidated damages under the Labor Law, and (6) $2,778.95 for unlawfully retained tips.

C.   **Which Defendants are Liable?**

"Employers" are liable for violations of the FLSA and the Labor Law.  The FLSA defines "employer" broadly as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "The Supreme Court has emphasized the 'expansiveness'" of this definition, and "the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'"  Herman, 172 F.3d at 139 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

24

In determining whether someone is an "employer" under the FLSA's definition, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the economic reality presented by the facts of each case."[15]  Herman, 172 F.3d at 139; see also Danneskjold v. Hausrath, 82 F.3d 37, 40 (2d Cir. 1996); Diaz v. Consortium for Worker Educ., Inc., No. 10 Civ. 01848 (LAP), 2010 WL 3910280, at *2 (S.D.N.Y. Sept. 28, 2010).  Factors considered probative of control include whether the individual defendant "'(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  Doo Nam Yang, 427 F. Supp. 2d at 342 (quoting Herman, 172 F.3d at 139).  This list is neither exclusive nor exhaustive, as a defendant need not satisfy any particular factor or all the factors to qualify as an employer.  See Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71 (2d Cir. 2003).

---

[15] The definition of "employer" under the Labor Law is "coextensive[] with the definition used by the FLSA."  Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010) (citation and quotation marks omitted); see also N.Y. Lab. Law §§ 190(3), 651(6); Chung v. New Silver Palace Rest., Inc., 272 F. Supp. 2d 314, 318 & n.6 (S.D.N.Y. 2003).

Defendants did not dispute that Florio's and Ralph were Lanzetta's "employers," but they argued that Lawrence was not because he was "merely . . . the floor manager . . . and had no direct responsibility for the payroll." (Tr. 39). This understates Lawrence's role at Florio's as well as the versatility of the economic reality inquiry and the breadth of the term "employer." Individual liability turns on "functions rather than titles." See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003). The question is whether Lawrence "possessed the power to control" Lanzetta. See Herman, 172 F.3d at 139; Ansoumana, 255 F. Supp. 2d at 192. I conclude that he did.

Evidence in the record supports all four of the "economic reality" factors. With respect to the first factor, Lawrence had the power to hire and fire employees generally, even though he did not hire Lanzetta. (See Tr. 25). With respect to the second factor, Lawrence gave Lanzetta her schedule on her first day of work. (Id. 7-8). Like his father, he was a constant presence in the restaurant (id. 24), "manag[ing] the day-to-day operations of the restaurant" and "responsible for all incoming invoices, billing, booking of

parties, floor operations, and supervision of employees" (JPTO 2 ¶¶ 5-6). The third and fourth factors are closely related in this case. Defendants stated that Lawrence and Ralph shared responsibility for keeping "handwritten records of the hours [employees] worked," using those notes to determine employees' wages for the week, and "destroy[ing]" the notes thereafter. (Id. 2 ¶ 8, 13 ¶¶ K-L; Tr. 25, 46, 47). If Lanzetta had been paid a wage, the "rate and method of payment" would have been based on the Amorusos' notes. Instead, the Amorusos never paid her. Thus, Lawrence had a role in facilitating the violations at issue, which has also been considered significant in the economic reality inquiry. See Dole v. Simpson, 784 F. Supp. 538, 545 (S.D. Ind. 1991) ("A general manager may be personally liable for FLSA violations if he or she acted on behalf of the corporation to cause the violations."); cf. Baystate Alt. Staffing, Inc. v. Herman 163 F.3d 668, 677-79 (1st Cir. 1998) (manager was not an "employer" because he did not "mak[e] decisions about the conduct of the business that contributed to the violation").

In a similar case, Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 291 (E.D.N.Y. 2002), the president and sole shareholder

27

of Vidtape had a brother who was found to be an "employer"
because he hired employees, supervised them in the shareholder's
absence, gave them instructions on the job, "sometimes directed
them to work on the weekend," and could sign checks on the
company's behalf.  By comparison, the shareholder's father, who
also worked at Vidtape, was not an "employer" because his
responsibilities -- giving occasional orders or directions,
attending some employee meetings -- were far less significant.
The father "did not hold an integral role in Vidtape's
operations, or in setting work policies, schedules or conditions
of employment."  Id. (citation omitted).  Lawrence's role at
Florio's closely resembled the brother's and was far more
integral to operations at Florio's than was the father's at
Vidtape.  See also, e.g., Ansoumana, 255 F. Supp. 2d at 193
(granting summary judgment in plaintiffs' favor because
"operational management of [businesses] is sufficient under the
law to satisfy the broad statutory definition of 'employer'").

        It is plain that Lawrence "control[led] significant
functions of the business," id. at 192, and had the "power to
control" Lanzetta and the conditions of her employment, Herman,
172 F.3d at 139.  This control was not diminished because it was

shared with Ralph.  See id. ("[Employer] status does not require

. . . any sort of absolute control of one's employees.  Control

may be restricted, or exercised only occasionally, without

removing the employment relationship from the protections of the

FLSA, since such limitations on control 'do[] not diminish the

significance of its existence.'"  (second alteration in

original) (quoting Donovan v. Janitorial Servs., Inc., 672 F.2d

528, 531 (5th Cir. 1982))).  Accordingly, based on the economic

reality factors and the totality of the circumstances, I

conclude that Lawrence exhibited sufficient control over

Lanzetta to be considered her "employer," as that term is

broadly defined by the FLSA.  See Ansoumana, 255 F. Supp. 2d at

188 ("The terms are to be expansively defined, with 'striking

breadth,' in such a way as to 'stretch . . . the meaning of

employee to cover some parties who might not qualify as such

under a strict application of traditional agency law

principles.'") (citations omitted).

## CONCLUSION

        For the foregoing reasons, judgment will be entered in

favor of Lanzetta against all three defendants, jointly and

severally, in the amount of $127,938.31.  Lanzetta shall submit

a proposed judgment together with an application for attorneys'

fees and costs by February 8, 2011.  Defendants shall submit any

opposition to the application for fees and costs and any

objection to the proposed judgment by February 18, 2011.

        SO ORDERED.

Dated:     New York, New York
             January 25, 2011

                                            DENNY CHIN
                                            United States Circuit Judge
                                          Sitting by designation