UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x
                         :

CARMELA LANZETTA,

                         :

              Plaintiff,                **MEMORANDUM DECISION**

                         :

        - against -              08 Civ. 6181 (DC)

                         :

FLORIO'S ENTERPRISES, INC., d/b/a
FLORIO'S RESTAURANT, RALPH AMORUSO,  :
LAWRENCE AMORUSO,

                         :

              Defendants.

                         :

- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM, LLP
                Attorneys for Plaintiff
                    By:  Daniel Maimon Kirschenbaum, Esq.
                        Matthew David Kadushin, Esq.
        757 Third Avenue
        New York, NY  10017

        DEVEREAUX & ASSOCIATES, P.C.
                Attorneys for Defendants
                    By:  Sidney Baumgarten, Esq.
                        John W. Russell, Esq.
        39 Broadway, Suite 910
        New York, NY  10006

**CHIN, Circuit Judge**

      Following a two-day bench trial, the Court issued an

opinion on January 25, 2011, finding defendants Florio's

Restaurant and Ralph and Lawrence Amoruso ("defendants")[1] jointly

---

    [1]    The Court did not learn until after it issued its
opinion that Lawrence Amoruso had passed away on January 13,
2011.  (ECF No. 44).  Defendants filed a notice of death on April

and severally liable to plaintiff Carmela Lanzetta for violations
of the Fair Labor Standards Act (the "FLSA") and the New York
State Labor Law (the "Labor Law").  The Court awarded plaintiff
$127,938.31 in damages.  See Lanzetta v. Florio's Enters., Inc.,
763 F. Supp. 2d 615, 628 (S.D.N.Y. 2011).

On February 8, 2011, plaintiff submitted (1) an
application for fees and costs; and (2) a motion for
reconsideration pursuant to Federal Rule of Civil Procedure 59(e)
and Local Civil Rule 6.3, based on purported errors she
identifies in the Court's damages award.  On April 25, 2011,
defendants submitted an affirmation in opposition to the amount
of fees requested but did not oppose the motion for
reconsideration.  Plaintiff replied on May 2, 2011.

As discussed more fully below, the application for fees
and costs is granted.  The motion for reconsideration is granted

---

6, 2011.  Lanzetta did not file a motion to substitute Lawrence
Amoruso's estate, and more than 90 days have transpired.  Fed. R.
Civ. P. 25(a).  Accordingly, as required by Rule 25(a), the
claims against Lawrence Amoruso are dismissed.  See id. ("If the
motion is not made within 90 days after service of a statement
noting the death, the action by or against the decedent must be
dismissed."); see also Unicorn Tales, Inc. v. Banerjee, 138 F.3d
467, 470 (2d Cir. 1998) (noting that Rule 25(a)(1) "does not
require that the statement [of death] identify the successor or
legal representative [of the deceased party]; it merely requires
that the statement of death be served on involved parties").

in part and denied in part.  Judgment will be entered in the
amount of $231,554.38, which reflects $70,097.70 in fees and
costs, and $161,456.68 in damages.

A.   **The Motion for Reconsideration**

The decision to grant or deny a motion for
reconsideration is committed to the discretion of the court.  See
Griffin Ins., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368
(S.D.N.Y. 1999).  The primary grounds justifying reconsideration
are:  (1) an intervening change in controlling law; (2) the
availability of new evidence; or (3) the need to correct a clear
error or prevent manifest injustice.  Virgin Atl. Airways, Ltd.
v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

The present motion for reconsideration concerns the
proper approach to calculating damages where liability is
established under both the FLSA and the Labor Law.  Here,
defendants were liable under both statutes at all relevant times
after July 7, 2005.  Plaintiff argues that the back pay and FLSA
liquidated damages awarded for the period of overlapping
liability were erroneously calculated using the federal minimum
wage-rate, 29 U.S.C. § 206(a)(1), as opposed to New York State's
higher minimum wage-rate, N.Y. Lab. Law § 652(1).  She also
argues that for this period she is entitled to an award of

- 3 -

liquidated damages under both the FLSA and the Labor Law, not just the FLSA.  She seeks an additional $41,187.87 in connection with these claims.

### 1.   The Wage-Rate for Minimum Wage and Overtime Damages

Defendants violated the Labor Law and the FLSA by failing to pay plaintiff lawful wages while she was in their employ.  Both federal and state law require certain employers to pay employees a minimum wage for the employees' first 40 hours of work each week, 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1), and to pay an overtime premium of one-and-a-half times the employees' regular rate of pay for every hour worked thereafter, 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.3.  Plaintiff contends that the Court erred in awarding back pay based on the minimum wage-rate in the FLSA, 29 U.S.C. § 206(a)(1), rather than the higher rate applicable under state law, N.Y. Lab. Law § 652(1).  (Pl.'s Mem. 3).  I agree that the calculation was incorrect.

The FLSA contains a savings clause that provides, in relevant part, that compliance with federal wage laws does not excuse an employer's "noncompliance with any . . . State law . . . establishing a minimum wage higher than the minimum wage established under [the FLSA]."  29 U.S.C. § 218(a).  This

- 4 -

provision "made clear [Congress's] intent not to disturb the traditional exercise of the states' police powers with respect to wages and hours more generous than the federal standards." <u>Pac. Merch. Shipping Ass'n v. Aubry</u>, 918 F.2d 1409, 1421 (9th Cir. 1990). In other words, § 218(a) "specifically mandates that state law, rather than federal law, applies where the state law provides for . . . a higher minimum wage." <u>Soler v. G & U, Inc.</u>, 768 F. Supp. 452, 462 n.16 (S.D.N.Y. 1991); <u>accord</u> <u>Ervin v. OS Rest. Servs. Inc.</u>, 632 F.3d 971, 977 (7th Cir. 2011) (concluding that § 218(a) "preserv[es] state and local regulations"); <u>Overnite Transp. Co. v. Tianti</u>, 926 F.2d 220, 222 (2d Cir. 1991); <u>Estanislau v. Manchester Developers, LLC</u>, 316 F. Supp. 2d 104, 112 n.2 (D. Conn. 2004) ("To the extent that state law provides a greater remedy than the FLSA, [p]laintiff would not be precluded from recovering under it.").

In this case, the minimum wage in New York was higher than the federal wage at all times beginning on January 1, 2005.[2]

---

[2] In 2004, the minimum wage under both statutes was $5.15. In New York, it was raised to $6.00 on January 1, 2005, and to $6.75 on January 1, 2006. As of January 1, 2007 and for all relevant times thereafter, the minimum wage was $7.15. N.Y. Lab. Law § 652(1); N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.2. The federal minimum wage increased to $5.85 on July 24, 2007, where it remained at all relevant times thereafter. <u>See</u> 29 U.S.C. § 206(a)(1).

State law therefore "control[led] the employer's duty." Cranford v. City of Slidell, 25 F. Supp. 2d 727, 728 (E.D. La. 1998); accord Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) (concluding that plaintiffs could take advantage of the higher measure of damages under New York law (citing 29 U.S.C. § 218(a)); Yi Dong v. CCW Fashion, Inc., Nos. 06 Civ. 4973, 07 Civ. 9741 (LAP) (DFE), 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) (same); Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 313483, at *25 (S.D.N.Y. Feb. 1, 2007) (same); see also Dancer v. Golden Coin, Ltd., 176 P.3d 271, 274-75 (Nev. 2008) ("As [Nevada law] has established a higher minimum wage than that required under the FLSA . . . , [Nevada Law] governs appellants' claims."). Accordingly, plaintiff's damages for minimum wage and overtime violations shall be revised to include an additional $12,925.50.

## 2.   Liquidated Damages Under the FLSA

Under the FLSA, an employer who violates the statute's minimum wage or overtime provisions, 29 U.S.C. §§ 206, 207, "shall be liable to the employee . . . affected in the amount of their unpaid minimum wages [and/or] their unpaid overtime compensation . . . in an additional equal amount as liquidated

damages." § 216(b).  The Court awarded plaintiff liquidated

damages under this provision for claims that were timely under

the FLSA.  Plaintiff argues that the state wage-rate should have

been used instead.  I agree, but only to the extent that the

liquidated damages were for overtime violations, under § 207.

Liquidated damages for minimum wage violations were properly

calculated under § 206(a)(1).

    a.   **Liquidated Damages for Overtime Violations**

    The FLSA provides that for all hours in a week that an

employee works in excess of 40, she must be paid "at a rate not

less than one and one half times the regular rate at which [s]he

is employed." § 207(a)(1).  The words "regular rate" "refer[] to

the hourly rate actually paid the employee for the normal, non

overtime workweek for which he is employed." <u>Walling v.

Youngerman Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945).  This

means that § 207(a)(1) "require[s] the fifty percent overtime

premium to be added to the actual wage paid, not to the statutory

minimum wage." <u>Mumbower v. Callicott</u>, 526 F.2d 1183, 1187 (8th

Cir. 1975); <u>accord Overnight Motor Transp. Co. v. Missel</u>, 216

U.S. 572, 577 (1942) (holding that § 207(a)(1) "is clear and

unambiguous" in "call[ing] for 150% of the regular, not the

minimum, wage").

But plaintiff was not paid any wages.  Thus, the Court used the federal minimum wage as her "regular rate" for purposes of calculating overtime under § 207(a)(1).  The regulations, however, clarify that "[w]here a higher minimum wage . . . is applicable to an employee by virtue of [state law], the regular rate of the employee, as the term is used in the [FLSA], cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 [§ 207] must be construed to mean the regular rate at which he is <u>lawfully</u> employed."  29 C.F.R. § 778.5 (emphasis added).  Thus, the Court should have used the New York State minimum wage as plaintiff's "regular rate."  <u>See, e.g.</u>, <u>Pineda-Herrera v. Da-Ar-Da, Inc.</u>, No. 09-CV-5140 (RLM), 2011 WL 2133825, at *3 (E.D.N.Y. May 26, 2011) (calculating FLSA overtime using New York's higher minimum wage). Plaintiff's liquidated damages will be adjusted to reflect a $5,265.50 increase, bringing her total recovery under 29 U.S.C. § 216(b) to $53,649.50.

### ii. <u>Liquidated Damages for Minimum Wage Violations</u>

For several reasons, I do not agree that the portion of plaintiff's liquidated damages that is based upon minimum wage violations should also be calculated using the state rate.

The regulation that incorporated the state wage for
purposes of the FLSA's overtime provision, 29 C.F.R. § 778.5,
does not apply to the FLSA's minimum wage provision, 29 U.S.C.
§ 206.  Section 778.5 appears under the heading "Overtime
Compensation" and references only "section 7" -- that is, § 207;
there is no similar provision for "section 6."  Nor is the text
of § 206 amenable to being read in conjunction with § 778.5, for
unlike § 207, § 206 does not define wages by reference to a
"regular rate."  Rather, the rates are set forth in the text of
the statute.[3]  Pineda-Herrera, 2011 WL 2133825, at *5 ("In
contrast [to § 207(a)(1)], for non-overtime wages, the FLSA
requires only that employers pay the minimum wage rates set by
federal law.").

Yet there are many examples of decisions citing § 778.5
as authority for incorporating the higher state wage into § 206
and then using it to calculate liquidated damages.  See, e.g.,
Kopec v. GMG Constr., No. 09-CV-2187 (KAM) (ALC), 2010 WL
3925210, at *3 (E.D.N.Y. Sept. 10, 2010), vacated on other
grounds by 2011 WL 2650597 (E.D.N.Y. July 6, 2011) (concluding

---

[3]     During the time periods relevant to this lawsuit, § 206
required wages "not less than $5.15 an hour beginning September
1, 1997," 29 U.S.C. § 206(a)(1) (2006), and "not less than . . .
$5.85 an hour, beginning on the 60th day after May 25, 2007,"
§ 206(a)(1) (2007).

that "New York['s] minimum wage automatically replaces the
federal minimum wage rate if it is greater than the federal
minimum" (citing 29 C.F.R. § 778.5)); Pereira v. J. Sisters Hair
Care Prods., Inc., No. 08 Civ. 4537 (GBD) (RLE), 2010 WL 2194807,
at *1 & n.1 (S.D.N.Y. June 1, 2010) (same); Mendez v. Nooch,
Inc., No. 08 Civ. 2009 WL 666771, at **2, 4, 5 (S.D.N.Y. Mar. 6,
2009) (same).

　　　　The savings clause, 29 U.S.C. § 218(a), which is
sometimes cited as additional support for incorporation of higher
state wages, also does not support incorporation.  Though it
expressly defers to state wage laws affording employees greater
protection, it does not also "adopt such higher wages as the
measure of damages for FLSA violations."  Fast v. Applebee's
Int'l, Inc., No. 06-4146-CV-c-NKL, 2009 WL 2391775, at *7 (W.D.
Mo. Aug. 3, 2009); accord Wicaksono v. XYZ 48 Corp., No. 10 Civ.
3635 (LAK) (JCF), 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011),
adopted by 2011 WL 2038973 (S.D.N.Y. May 24, 2011);
Pineda-Herrera, 2011 WL 2133825, at *4 (limiting liquidated
damages under FLSA "to the rates applicable under that statute"
(citing 29 U.S.C. § 216(b)); McElmurry v. U.S. Bank Nat'l Ass'n,
No. Civ. 04-642-HU, 2005 WL 2078334, at *3 (D. Or. Aug. 24, 2005)
(rejecting the argument that under § 218(a) "the failure to pay a

higher state minimum wage law results in an FLSA violation,
rather than a violation of that state law"); Bedford v. City of
Del City, No. Civ. 91-2152-A, 1993 WL 760383, at *5 (W.D. Okla.
Apr. 2, 1993) (noting that § 218(a) "does not incorporate the
'labor law' of all cities and states, but solely addresses
federal, state or local provisions for shorter work weeks when
calculating overtime"); Gilb v. Chiang, 186 Cal. App. 4th 444,
473 (3d Dist. 2010) (concluding that § 778.5 "cannot dictate the
level of payment of regular non-overtime wages" and rejecting
argument that § 218(a) "federalize[s] state minimum wage laws").

          In fact, in the only circuit court decision published
on this issue, the First Circuit held that § 218(a) "does not
purport to incorporate existing state law." Cosmo Nieves v.
Deshler, 786 F.2d 445, 452 (1st Cir. 1986); see also Bruns v.
Municipality of Anchorage, 182 F.3d 924, No. 97-36060, 1999 WL
288910, at *2 (9th Cir. May 10, 1999) (unpublished) (concluding
that "plaintiffs' attempted melding of the FLSA and state law
claims does not withstand scrutiny" because § 218(a) "does not
purport to incorporate existing state law"); cf. Spoerle v. Kraft
Foods Global, Inc., 614 F.3d 427, 429 (7th Cir. 2010) ("No one
would contend that [an] employer could pay the workers [less than
the state minimum wage], even though that is allowed by federal

law [under 29 U.S.C. § 203(o)]."); <u>Shin Won Kang v. Inno Asset</u>
<u>Dev., LLC</u>, No. 08-CV-4848 (SLT) (JMA), 2011 WL 1674554, at *2
(E.D.N.Y. Jan. 28, 2011) (contrasting the FLSA, which promises
only "the statutory minimum wage," with the Labor Law, under
which plaintiffs "collect the full amount of wages contractually
owed" (citing N.Y. Lab. Law § 191(1)(a)(i)).

In sum, the FLSA does not support plaintiff's argument.
Hence, I conclude that it was not error to calculate liquidated
damages at the rate prescribed by 29 U.S.C. § 206(a)(1).  <u>See</u>
<u>Wicaksono</u>, 2011 WL 2022644, at *7 (concluding that this approach
"avoids the implication unsupported by the statute or by case law
. . . that 29 U.S.C. § 218 makes it a violation of federal law to
fail to pay the state minimum wage rate" (citations omitted)).

### c.   Liquidated Damages under Both Statutes

For plaintiff's minimum wage and overtime claims that
were timely under the FLSA and the Labor Law, the Court awarded
liquidated damages under the FLSA because it provided a higher
measure of recovery than did the Labor Law, <u>i.e.</u>, 100 percent
unpaid wages versus 25 percent.  Plaintiff argues that she was
entitled to collect under both statutes.  I agree.

First, Second Circuit case law clearly recognizes that
liquidated damages under the FLSA and the Labor Law serve

different purposes.  Under the FLSA, the term "liquidated

damages" has been described as "something of a misnomer," Brock

v. Sup. Care, Inc., 840 F.2d 1054, 1063 n.3 (2d Cir. 1988),

because these damages "are considered compensatory rather than

punitive in nature," Reich v. S. New Eng. Telecomm. Corp., 121

F.3d 58, 71 (2d Cir. 1997).  "[T]hey serve as a form of

pre-judgment interest." Yu G. Ke v. Saigon Grill, Inc., 595 F.

Supp. 2d 240, 261 (S.D.N.Y. 2008); accord Reich, 121 F.3d at 70

n.4 ("Congress provided for liquidated damages as a means of

compensating employees 'for losses they might suffer by reason of

not receiving their lawful wage at the time it was due.'"

(quoting Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d

Cir. 1991))).  Hence, "[i]t is well settled that in an action for

violations of the [FLSA] prejudgment interest may not be awarded

in addition to liquidated damages." Brock, 840 F.2d at 1064.

Plaintiff has not asked separately for prejudgment interest here.

Liquidated damages under the Labor Law, however, are

punitive in nature.  They "'constitute a penalty' to deter an

employer's willful withholding of wages due." Reilly v. NatWest

Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter

v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116 (1st Dep't 1980)).

Because of the different purposes the two forms of

liquidated damages serve, plaintiff may recover under both

statutes without obtaining an impermissible double recovery.  See
Saigon Grill, 595 F. Supp. 2d at 261-62; DeKeyser v. Thyssenkrupp
Waupaca, Inc., 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008)
("While [p]laintiff may not obtain double recovery, he is free to
pursue relief under the FLSA as well as state statutory and
contract claims.").

An analogous situation exists in discrimination cases.
There, as here, a plaintiff is entitled to seek relief under an
array of statutes, and as long as she does not recover twice for
the same injury, she may maximize her recovery by seeking
different damages under the statutes that afford her the greatest
relief.  For example, punitive damages for discriminatory conduct
are not available under New York Human Rights Law but can be
awarded under Title VII and the Americans with Disabilities Act
(the "ADA").  On the other hand, an award of compensatory damages
under Title VII and the ADA are statutorily capped, 42 U.S.C.
§ 1981a(b)(3), whereas recovery under the New York Human Rights
Law is not.  Plaintiffs typically proceed under both statutes to
maximize their recoveries.

Finally, I note that once the employer's willfulness
has been established, both the Labor Law and the FLSA seem to
require that a plaintiff be awarded liquidated damages.  The
Labor Law directs that "the court shall allow" such damages, N.Y.

- 14 -

Lab. Law §§ 198(1-a), 663(1); see Reilly, 181 F.3d at 264, and the FLSA similarly provides that employers "shall be liable to the employee" for the additional recovery, 29 U.S.C. § 216(b). Accordingly, plaintiff will be awarded liquidated damages under the Labor Law on all wage and overtime claims, which is an additional $15,327.37.

**B.   The Application for Attorneys' Fees and Costs**

As the prevailing party in this action, plaintiff is entitled to reasonable fees and costs.   29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).   She requests an award of $68,745.00 in attorneys' fees and costs of $1,352.70.

**1.   Applicable Law**

In the Second Circuit, awards of attorneys' fees are calculated based on the "presumptively reasonable fee" approach adopted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 & n.4 (2d Cir. 2008).   Under this approach, the court sets a "reasonable hourly rate," bearing in mind all the case-specific variables, and then multiplies the rate times the number of hours reasonably expended to calculate the "presumptively reasonable fee."   Id. at 190; see Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 141 (2d Cir. 2007).

- 15 -

A reasonable hourly rate is "the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190.  In setting this rate, a court is to consider the traditional factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).  The court must also bear in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and consider that the client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." Id. at 186.  It may rely both on "its

own knowledge of comparable rates charged by lawyers in the district," Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004), as well as on "evidence proffered by the parties," Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005). "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment," LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998), and contemporaneous time records are a prerequisite to a plaintiff's recovery, see Scott v. City of New York, 626 F.3d 130, 133 34 (2d Cir. 2010).

Some of the Johnson factors "are more logically related to determining the number of hours that should be compensated, and others, such as the extent of success, might be considered in setting the number of compensable hours or in making a further adjustment after a presumptive fee has been established." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008). Adjustments must be made to account for "excessive, redundant or otherwise unnecessary hours." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Overall, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

- 17 -

2.   <u>Application</u>

Taking into account the <u>Johnson</u> factors and other relevant considerations, I determine the reasonable hourly rates; I determine the reasonable number of hours expended; I multiply the two to arrive at the "presumptively reasonable fee"; and I consider whether to make adjustments to arrive at the final fee award.

a.   <u>The Hourly Rates</u>

The hourly rates that plaintiff requests are reasonable for this type of case and are consistent with the rates awarded in other FLSA and statutory fee cases in the Southern District of New York.

Mr. Kirschenbaum, a 2005 graduate of Fordham Law School and lead counsel, requests $300 per hour for his work as an associate and $350 per hour once he was made a partner in September 2009, roughly one year before the trial in this case. (Kirschenbaum Aff. ¶¶ 16, 20).

Ms. Hester requests $350 per hour. (<u>Id.</u> ¶23). She is a graduate of Harvard Law School and has worked in litigation, first at Debevoise & Plimpton and then at Joseph Herzfeld, since her graduation in 1990. (<u>Id.</u> ¶ 17). She contributed to the briefing in this case. (<u>Id.</u> ¶ 16).

Two associates, Mr. Kadushin and Ms. Schulman, request
$300 and $200, respectively (id. ¶¶ 18, 19), and Ms. Pliskin, a
paralegal, requests $100 per hour for her work but has not sought
reimbursement for administrative tasks (id. ¶¶ 21, 23).  The firm
discounted its rates to reflect the fact that this was not a
class action.  (Id. ¶ 22).

"[C]onsistent 'precedent in the Southern District
reveals that rates awarded to experienced civil rights attorneys
over the past ten years have ranged from $250 to $600, and that
rates for associates have ranged from $200 to $350, with average
awards increasing over time.'"  Mugavero v. Arms Acres Inc., 03
Civ. 5724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010)
(quoting Vilkhu v. City of New York, No. 06 Civ. 2095 (CPS), 2009
WL 1851019, at *4 (E.D.N.Y. June 26, 2009)); see also Saunders v.
City of New York, 07 Civ. 830 (SAS), 2009 WL 4729948, at *8
(S.D.N.Y. Dec. 9, 2009) (approving $425/hour rate for partners
with "substantial experience litigating employment matters" and
$200-$300/hour for associates); N.Y. Dist. Council of Carpenters
Pension Fund v. Perimeter Interiors, Inc., 657 F. Supp. 2d 410,
424 (S.D.N.Y. 2009) (awarding $425/hour for partners, $300/hour
for associates, and $150/hour for paralegal work in ERISA default
case).

- 19 -

### b.  Number of Hours

Plaintiff's request for time -- 205.60 hours of legal work and 15.0 hours of paralegal work (see Kirschenbaum Aff. ¶ 23) -- is also reasonable.  These are eminently reasonable sums for a case that has been actively litigated since July 2008. Specifically, plaintiff's attorneys conducted discovery and depositions, opposed defendants' motion for summary judgment, prepared for an interlocutory appeal on which defendants ultimately defaulted, and prosecuted a two-day bench trial at which they prevailed.

### c.  Costs

Finally, the $1,352.70 in costs plaintiff seeks are reasonable.  She is entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Here, plaintiff only seeks costs related to court filings and depositions.  (Kirschenbaum Aff. ¶ 24).

### d.  Defendants' Objections

Defendants concede that plaintiff is entitled to fees and costs, but they raise several objections to her application. First, they contend that her request is "facially excessive and

unconscionable" because it equals almost 50 percent of the
judgment.  (Baumgarten Aff. ¶ 4).  Proportionality, however, is
not a proper basis on which to adjust plaintiff's otherwise
reasonable request.  Because "Congress enacted fee-shifting
statutes . . . to encourage private enforcement of civil rights
statutes, to the benefit of the public as a whole," Quaratino,
166 F.3d at 426, the Supreme Court has rejected a per se
"proportionality" rule like the one defendants suggest, i.e., a
rule that would proportionally link a plaintiff's fees to the
scale of her monetary success in the case, City of Riverside v.
Rivera, 477 U.S. 561, 578 (1986).

Defendants next argue that the judgment in this case
"will virtually bankrupt a small, family owned restaurant."
(Baumgarten Aff. ¶ 6).  Yet they provided no examples of
instances in which a court has adjusted a fee award based upon a
defendant's economic condition.  See, e.g., Allende v. Unitech
Design, Inc., -- F. Supp. 2d --, No. 10 Civ. 4256 (AJP), 2011 WL
891445, at *1 n.1 (S.D.N.Y. Mar. 15, 2011) (noting that even if
such circumstances "could be an equitable factor considered by
the Court, defendants [did] not proffer[] any evidence of their
financial condition").

I conclude that no adjustments are necessary.  The
request of $70,097.70 for attorneys' fees and costs is reasonable

- 21 -

in light of the result achieved and all the circumstances of the case. Accordingly, I will award the presumptively reasonable fee.

### CONCLUSION

For the foregoing reasons, plaintiff's application for fees and costs is granted. Her application for reconsideration is granted in part and denied in part.

The Court will enter judgment reflecting these rulings.

SO ORDERED.

Dated:     July 27, 2011
           New York, New York

                                    _____
                                    DENNY CHIN
                                    United States Circuit Judge
                                    Sitting By Designation

- 22 -